

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LAURA BILBERRY,<br>　　PLAINTIFF, | § § § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-117-A |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　DEFENDANT. | § § § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Laura Bilberry ("Bilberry") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Bilberry applied for DIB in August 2009, alleging that her disability began on April 30, 2005. (Transcript ("Tr.") 25, 176-80.) After her application for benefits was denied initially and on reconsideration, Bilberry requested a hearing before an administrative law judge ("ALJ"). (Tr. 25, 93-104.) The ALJ held a hearing on August 10, 2011, and he issued an unfavorable decision on September 16, 2011. (Tr. 25-31, 36-80.) On November 6, 2012, the Appeals Council denied Bilberry's request

for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 4-9.) Bilberry subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this

responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUE

In her brief, Bilberry presents one issue: Whether the ALJ's severe impairment finding at Step Two is supported by substantial evidence. (Plaintiff's Brief ("Pl.'s Br.") at 1; *see* Pl.'s Br. at 5-9.)

## III. ALJ DECISION

In his September 16, 2011 decision, the ALJ found that Bilberry had not engaged in any substantial gainful activity since April 30, 2005, the alleged date of Bilberry's onset of her disability, and met the disability insured status requirements of the SSA through September 30, 2009. (Tr. 26, 30.) The ALJ further found that Bilberry suffered from the following severe impairments: "severe obesity, joint pain of unknown origin, hypertension, hypothyroidism, and

pre-diabetes." (Tr. 30; *see* Tr. 26-29.) Next, the ALJ held that none of Bilberry's impairments or combination of impairments met or equaled the severity of any impairments in the Listing. (Tr. 26, 30.) As to Bilberry's RFC, the ALJ stated:

> The claimant has retained the [RFC] to perform work activity limited by the need to sit or stand, at her option, while in the performance of job duties; limited to no more than two hours of standing and/or walking during an eight-hour workday, with sitting possible for six of the eight hours; no climbing of ladders, ropes or scaffolds.

(Tr. 30; *see* Tr. 29.)[1] Next, the ALJ found that Bilberry was able to perform her past relevant work as "an officer manager and corrections officer/gate guard." (Tr. 30-31.) Consequently, the ALJ concluded that Bilberry was not disabled. (*Id.*)

## IV. DISCUSSION

### A. <u>Step Two Issue</u>

Bilberry claims that the ALJ's severe impairment finding at Step Two was not supported by substantial evidence. (Pl.'s Br. at 5-9.) Specifically, Bilberry argues that the ALJ's

---

[1] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). Light work is defined as follows:

> Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id.* at *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*

conclusion that fibromyalgia was not a severe impairment was not supported by substantial evidence. (Pl.'s Br. at 6.) Bilberry argues that the ALJ's statements that Dr. Emily M. Isaacs, M.D. ("Dr. Isaacs") did not test her for the fibromyalgia trigger points and that it was unclear whether Dr. Isaacs (or another physician) had actually assessed Bilberry with fibromyalgia are "in direct conflict with the actual evidence in the record." (Pl.'s Br. at 6.) Bilberry states that, contrary to the ALJ's statements, Dr. Isaacs did perform a fibromyalgia trigger point examination, finding eight of the required eleven trigger points required by Social Security Ruling ("SSR") 12-2p, and diagnosed Bilberry with fibromyalgia. (Pl.'s Br. at 6-7.) Bilberry further argues that the ALJ's error in not finding her impairment of fibromyalgia as severe, in turn, negatively impacted the ALJ's credibility finding. (Pl.'s Br. at 8.)

In evaluating Bilberry's claim of fibromyalgia, the ALJ stated:

> The second step of the process inquires whether the claimant has a severe impairment . . . . The claimant alleges disability due to fibromyalgia and obesity, as well as hypothyroidism and hypertension. . . .
>
> . . . .
>
> The claimant alleges disability due to, in part, fibromyalgia, citing widespread joint pain. The claimant was tested for other possible causes, such as rheumatoid arthritis, but such tests were negative.
>
> . . . .
>
> Exhibit 5F consists of 12 pages of note[s] from Emily M. Isaacs, M.D., dated January 7, 2008. The claimant had gone to Dr. Isaacs complaining of "constant chronic pain", which the claimant said began back in 2001. The claimant said that due to the widespread pain she had difficulty walking, washing her entire body, picking up clothes, etc. The claimant measured the pain as a "9" on the 0-10 scale (with 10 being the worse [sic] level of pain), as well as a fatigue factor of 8.8. The claimant told the doctor that she had gained 100 pounds over the previous five years; at the time of the examination the claimant weighed 285 pounds. While the claimant had certainly gained weight (as noted above, she weighed 241 pounds in 2001) she obviously exaggerated concerning the amount of weight gained. The claimant also described having a burning sensation in her feet, which Dr. Isaacs stated could be peripheral neuropathy secondary to

diabetes. The examination itself did not reveal any patent abnormalities of the feet, while the distal pulses were full.

However, lab tests ordered by Dr. Isaac[s] again showed the claimant's A1c to be 6.4 percent, or slightly elevated. Rheumatoid factors were again negative. X-rays of the lumbar spine, while showing some degenerative changes, did not show any nerve canal impingement.

Dr. Isaac[s], in her narrative, noted that the claimant had been assessed with fibromyalgia. However, it is unclear whether Dr. Isaac[s] meant that another physician had so assessed the claimant, or that the claimant told Dr. Isaac[s] that such was the case. Dr. Isaac[s] did not cite having tested the claimant for the fibromyalgia trigger points.

The medical record as a whole does not indicate a high level of credibility on the claimant's part. For instance, I noted above how, in January 2008, the claimant told Dr. Isaac[s] that she had gained 100 pounds over the past five years, an assertion not supported by the record. Indeed, in December 2006 the claimant, while being evaluated for rectal bleeding, claimed that she had gained 100 pounds over the past year. At the time her weight was 274 pounds.

. . . .

There is, however, little evidence of the claimant seeing any doctors in the months leading up to her decision to stop working. Exhibit 1F consists of 13 pages of medical records from Neil M. Berry, D.O., dated February 23, 2004 to January 16, 2006. In February 2004, the claimant was being treated for acute bronchitis and asthma. In March 2004, the claimant did report having left shoulder pain of two months duration, although she did not cite any other pain. In April 2004, there is a note stating that the claimant had been trying Celebrex (usually prescribed for arthritic pain) and that she found it really helped. The claimant actually reported no acute problems, although she did say that she was having joint pain; Dr. Berry ordered lab tests that were negative for rheumatoid factors. The claimant did not return to Dr. Berry again until January 2006; there is nothing from 2005.

There is no evidence that the claimant has been diagnosed with fibromyalgia by a medical doctor. In December 2006, while being evaluated for an outpatient endoscopy, the claimant's various diagnoses were listed: fibromyalgia was not one of them.

When the claimant was examined by Dr. Isaac's [sic] in January 2008, the claimant did not refer to her having had to stop working as a corrections officer due to her pain. Indeed, under "Social History" Dr. Isaac's [sic] wrote: "The patient is married to her second husband who she married in 2002. He works locally and is a truck driver. She describes herself as an artist and has in the past

> painted and also does sewing and weaving. She indicates that she had not been able to do this because of her current complaints. She smokes one to two packs per day for the past 30 years. She drinks occasional alcohol. She has one grown son age 27 years old".
>
> . . . .
>
> In December 2009, the claimant underwent a consultative medical evaluation by David A. Ray, D.O. The claimant stated that she had diabetes mellitus with neuropathy, as well as osteoarthritis of the hips and lower back. . . . The claimant also said that she was diagnosed with fibromyalgia in 2007. The claimant appeared at the examination using a cane.
>
> The claimant's weight was 273 pounds. The claimant reported no tenderness of palpation along the back, and the doctor noted no muscle spasm or muscle atrophy. The claimant declined to perform the straight leg test, saying she would not be able to tolerate it. . . . Dr. Ray listed his impressions as pre-diabetes mellitus with neuropathy by history; hypertension; hypothyroidism.
>
> . . . .
>
> Exhibit 14 F consists of a physical capacity evaluation by Dr. [Tom] Tarkenton[, D.O.,] dated August 2010. While this form is obviously well past the claimant's date-last-insured, it may be considered since he was one of the claimant's treating doctors during the relevant period of time. Dr. Tarkenton opined that the claimant's physical [RFC] was for markedly less than sedentary level work, citing "fibromyalgia".
>
> Dr. Tarkenton's records are in Exhibit 6F, covering the period May 2006 through August 2009, and they make no reference to fibromyalgia. I will note that most of the records consist of lab results, although there are a few pages with Dr. Tarkenton's scribbled notes. He does refer to the claimant's report that she has had fatigue for the past fifteen years, and that her feet hurt while walking.

(Tr. 26-29 (internal citations omitted).)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *cf. id.* § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do

basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

In this case, the ALJ, as set forth above, found at Step Two that Bilberry had the severe impairments of obesity, joint pain of an unknown origin, hypertension, hypothyroidism, and pre-diabetes. (Tr. 30.) While the ALJ did not find that Bilberry's fibromyalgia was a severe impairment, the ALJ clearly discussed such impairment and analyzed the evidence in the record relating to Bilberry's fibromyalgia. (Tr. 26-29.) Even assuming without deciding that the ALJ incorrectly characterized some of the evidence in the record, including Dr. Isaacs's treatment and conclusions as to Bilberry's fibromyalgia, there is substantial evidence in the record that supports the ALJ's Step Two determination that Bilberry's fibromyalgia was not a severe impairment.[2] While there are references to pain and fibromyalgia in the medical record, there is also medical evidence indicating that, at times, (a) Bilberry did not mention her complaints regarding fibromyalgia, (b) Bilberry was not given a diagnosis of fibromyalgia by certain doctors even after Bilberry informed them that she had allegedly been diagnosed with such impairment, or (c)

---

[2] Bilberry asserts that pursuant to the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia set forth in SSR 12-2P, which became effective after the date of the ALJ's decision, the ALJ's statement that Dr. Isaacs did not perform a trigger point examination is false. (Pl.'s Br. at 7.) *See* SSR 12-2P, 2012 WL 3104869, at *2 (S.S.A. July 25, 2012). However, the Court notes that, pursuant to the referenced provisions of SSR 12-2P, an ALJ may find that a person has a medically determination impairment of fibromyalgia if he or she has, *inter* alia, at least eleven (of eighteen possible) positive tender points on physical examination. In this case, Bilberry admits that Dr. Isaac found only eight of the required eleven trigger points. (Pl.'s Br. at 7.) Consequently, Dr. Isaac's alleged diagnosis of fibromyalgia does not meet the definition of fibromyalgia, at least as set forth by the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia in SSR 12-2P.

some of Bilberry's symptoms relating to her alleged fibromyalgia had improved. (*See, e.g.*, Tr. 27-28.) The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)).

Moreover, the Court finds that, even assuming the ALJ erred in not finding fibromyalgia as a severe impairment at Step Two, any such error is harmless. *See, e.g., Murrell v. Colvin*, No. 3:12-CV-3757-G (BN), 2013 WL 4623549, at *5 (N.D. Tex. Aug. 29, 2013) ("[E]ven if the ALJ's determination that Plaintiff's borderline intellectual functioning was not a severe impairment was error, Plaintiff cannot show the prejudice required for remand.").[3] To begin with, the ALJ did find that Bilberry suffered from the severe impairment of, *inter* alia, joint pain of unknown origin. Because fibromyalgia is a chronic pain syndrome, it is plausible that the ALJ's finding of a severe impairment of joint pain of unknown origin implicitly incorporates a finding that Bilberry's fibromyalgia was severe. *See, e.g., McMillian v. Colvin*, No. 4:12-CV-661-A, 2014 WL 61172, at *14 (N.D. Tex. Jan. 6, 2014) ("[T]he ALJ's finding at Step Two that [the claimant] suffered from fibromyalgia was, in essence, a finding that [the claimant's] chronic pain syndrome was a severe impairment."); *Denton ex rel Denton v. Astrue*, No. 2:04–CV–0331, 2008 WL 763209, at *7 (N.D. Tex. Mar.21, 2008) (stating that a doctor classified claimant's fibromyalgia as a chronic pain syndrome).

---

[3] An error is harmless if it does not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

Furthermore, in the RFC determination, the ALJ provided Bilberry with a sit/stand option and limited her to, *inter alia*, no more than two hours of standing and/or walking during an eight-hour workday, with sitting possible for six of the eight hours.[4] Such RFC determination, which is supported by substantial evidence,[5] appears to incorporate the limitations associated with Bilberry's fibromyalgia. *See Boothe v. Colvin*, No. 3:12-CV-5127-D, 2013 WL 3809689, at *5 (N.D. Tex. July 23, 2013) ("But assuming *arguendo* that the ALJ erred by not finding based on [a doctor's] diagnoses that [the claimant's] impairments are severe, the error is harmless because the ALJ considered these conditions in the RFC analysis."); *Reliford v. Colvin*, No. H-12-1850, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("[E]ven if the ALJ's failure to make a specific severity finding with regard to foot pain was error, it was harmless because he considered related limitations at subsequent steps of the disability analysis."). Because any

---

[4] According to 20 C.F.R. 404.1545(e), the ALJ is to take into account the combined effects of all a claimant's impairments, including any non-severe impairments, in determining a claimant's RFC. 20 C.F.R. § 404.1545(e); *Johnson v. Astrue*, No. 5:09-CV-112-BG, 2010 WL 1817225, at *3 (N.D. Tex. Jan. 12, 2010) ("The ALJ is required to consider the combined effect of all the claimant's impairments.")

[5] Such evidence includes a January 19, 2010 Physical Residual Functional Capacity Assessment ("PRFCA") in which State Agency Medical Consultant Bonnie Blacklock, M.D. ("SAMC Blacklock"), opined that Bilberry (1) could lift and /or carry twenty pounds occasionally and ten pounds frequently; (2) could stand and/or walk at least two hours in an eight-hour workday; (3) could sit for a total of about six hours in an eight-hour workday; (4) had the unlimited ability to push and/or pull but was limited in the ability to reach in all directions; (5) could never climb ladders, ropes, or scaffolds; and (6) could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (Tr. 29; *see* Tr. 334-41.)

The Court notes that Dr. Tarkenton opined in a Physical Capacities Evaluation dated August 26, 2010, that Bilberry could sit two hours and stand/walk less than one hour in an eight-hour workday. (Tr. 415.) In addition, Dr. Tarkenton opined, *inter alia*, that Bilberry could occasionally lift up to twenty pounds and reach above shoulder level and never climb, balance, stoop, kneel, crouch, or crawl. (Tr. 416.) Dr. Tarkenton further found that Bilberry had pain that was disabling to the extent that it would prevent her from working full time at even a sedentary position. (Tr. 417.) While this particular evidence indicates that Bilberry was more functionally impaired by her alleged fibromyalgia than found by the ALJ, the Court notes that (1) Dr. Tarkenton's opinion was dated almost one year after the date that Bilberry last met the special earnings requirements of Title II and (2) there is other evidence that the ALJ relied on in making his RFC determination that provides substantial evidence for the ALJ's less limiting RFC determination, including SAMC Blacklock's PRFCA.

alleged error at Step Two is harmless, the Court concludes that remand is not required as to this issue.[6]

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 5, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed

---

[6] Because the Court has found that the ALJ did not err in his Step Two determination, the Court need not analyze Bilberry's additional argument regarding her credibility determination.

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 19, 2014.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv